UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NELSON SHARP and<br>DESTINY YACHTS, LLC<br><br>      Plaintiffs,<br><br>           v.<br><br>HYLAS YACHTS, INC.<br><br>      Defendant and Third-Party Plaintiff,<br><br>           v.<br><br>FORESPAR PRODUCTS CORP. and<br>GMT COMPOSITES, INC.<br><br>      Third-Party Defendants | Docket Number<br><br>1:11-CV-11814-RBC |

## OPPOSITION TO THE MOTION OF FORESPAR PRODUCTS CORP. FOR SUMMARY JUDGMENT

NOW COMES the Defendant, Hylas Yachts ("Hylas"), and submits the following opposition to the motion of Forespar Products Corp. ("Forespar") for summary judgment under Fed. R. Civ. P. 56. This opposition is limited to the applicability of the economic loss doctrine pursuant to the Court's Order of May 10, 2013 (Docket No. 102).

## Facts

This case arises out of the sale of a luxury Yacht, Hull No. 9, from Hylas to the Plaintiff, Nelson Sharp ("Sharp"). SOF, ¶ 35. After delivery of the Yacht and after using the Yacht for a period of time, Sharp complained that there were numerous failures with the Yacht's systems. SOF, ¶ 36. Sharp sent a demand letter under M.G.L. c. 93A, § 9, to Hylas seeking $600,000 in settlement of all claims. In the complaint, his request for relief increased to $2.4 million. SOF, ¶ 37. Sharp alleged in both the demand letter and his Complaint breach of express warranty and

1

breach of implied warranty of merchantability. SOF, ¶ 38. Sharp's complaint alleges serious risk of injury and danger to third persons. SOF, ¶ 34. In response, Hylas brought third party claims against Forespar and GMT. Hylas raises at least three claims arising in contract against Forespar: breach of express warranty, breach of the warranty of fitness for a particular purpose, and breach of contract. It also requests indemnification from Forespar. SOF, ¶ 39.

Hylas has worked with Forespar for over fifteen years. SOF, ¶ 47. Hylas works with Forespar, in part, because stands behind the quality products that it produces and that the purchasers of Hylas's multi-million dollar vessels demand. SOF, ¶ 48. Hylas works with Forespar in part because of its numerous representations standing behind its products and its diligence in honoring its warranty. SOF, ¶ 57. If Forespar did not stand behind and warrant the high quality of its products, Hylas would not do business with it. SOF, ¶ 49.

Forespar has built booms, masts, and other components for numerous Hylas vessels. SOF, ¶ 50. Forespar designs and manufactures a high quality product. If there are any defects or other problems in the manufacture of the components, Forespar agrees to correct the problems. SOF, ¶ 51. Forespar warrants all products manufactured by it to be free from factory defects in material and workmanship under normal use and with normal maintenance. SOF, ¶ 52.

In one instance, there was a mechanical issue with the furling system on a Hylas 70, and Forespar stood behind its product, met its warranty obligations, and made a substantial financial payment towards the settlement of that issue. SOF, ¶ 53. On at least four other occasions prior to the problems with Sharp's Yacht, Hylas or the owner of the vessel notified Forespar of defects in the design or manufacture of its components installed on a Hylas yacht. SOF, ¶ 54. In every instance, Forespar promptly and timely made necessary repairs and/or replacements of the defective components. SOF, ¶ 55. Additionally, during these instances, Forespar again stated to

Hylas in detail and with particularity that it would honor its warranty to Hylas, stand behind its products, and replace any defects. SOF, ¶ 56.

Forespar has expressly stated to that if Hylas has a problem with the manufacture or design of any of the components, Forespar will fix the problem or replace the component. SOF, ¶ 58. Forespar has instructed Hylas to put Forespar on notice of the nature of the problem so that it can request shipment of the product back to its California factory or to send a representative to inspect the product on site. SOF, ¶ 59. These were express, verbal statements made to Hylas and me on numerous occasions over the course of Hylas's relationship with Forespar. SOF, ¶ 60.

Forespar testified that it warrants its products. The designee most knowledgeable of Forespar, Scott Foresman, is the chief operating officer of Forespar. SOF, ¶ 40. Foresman testified to the terms of the express warranty that it provided to Hylas. SOF, ¶ 42. Foresman testified that Forespar "stands behind its product." SOF, ¶ 41. Foresman described the warranty as follows:

> Well, what ordinarily happens if there is an issue with one of our products, we hear from either the end user or, in this case, it could be a rigger or a dealer or boat manufacturer, an original equipment manufacturer, that they have some type of an issue with the Forespar product, and we gather information from them, we discuss how the product is being used, we discuss and gather information about what apparent problems there are, and then we work with that customer to either explain to them that they have not been using the product properly or we work with them to affect an approved repair.

SOF, ¶ 43.

Foresman further testified that the warranty extends to defects in the manufacture, design, or installation of Forespar's products. SOF, ¶ 44. To the extent that Forespar fails to correctly follow the specifications that it was provided in manufacturing a component, it will "correct that situation." SOF, ¶ 45. Foresman testified that there are no documents limiting Forespar's warranty to Hylas. SOF, ¶ 46.

Regarding Sharp's vessel, Hull No. 9 ("the Yacht"), each of the components that Forespar manufactured for the Yacht were custom-made for that vessel. SOF, ¶ 61. Hylas relied on Forespar's expertise in manufacturing those components. SOF, ¶ 62. Forespar knew that the components were being custom-made for the Yacht and that Hylas would be relying on its expertise to build working components. SOF, ¶ 63. Forespar designed the mast on its own. SOF, ¶ 64. GMT provided the specifications for the vang plate and the gooseneck to Forespar. SOF, ¶ 65. Forespar installed the components into a single unit prior to shipping it. SOF, ¶ 66.

On June 21, 2011, after receiving the results of the rig inspection of the Yacht, Hylas sent those results to Forespar and gave it notice of the problems that Sharp was having. SOF, ¶ 67. To Hylas's knowledge, Forespar never requested that any of the allegedly defective components of the Yacht be returned to it for examination. SOF, ¶ 68. Forespar was kept informed about the repairs made to the gooseneck bracket component. SOF, ¶ 69. Forespar never indicated to Hylas that it would not repair any of the defects or that the warranty did not cover those defects. SOF, ¶ 71.  Hylas hired Storm Rigging—a separate entity—to install the mast onto the Yacht. SOF, ¶ 70.

## **Argument**

Hylas raises at least three claims arising in contract against Forespar: breach of express warranty, breach of the warranty of fitness for a particular purpose, and breach of contract. SOF, ¶ 39. The economic loss doctrine does not bar claims arising in contract. See, e.g., Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 105-06 (1989). Thus, contrary to Forespar's contention, the lack of a remedy in tort does not compel dismissal of all of Hylas's claims against Forespar[1]. Summary judgment on these issues is inappropriate because

---

[1] The Chapter 93A demand letter that Sharp sent to Hylas and his Complaint against Hylas allege serious risk of injury and danger to third persons. SOF, ¶ 34. Sharp himself alleged breaches of

there are genuine issues of material fact, expert discovery remains incomplete, and the economic

loss doctrine is inapplicable to the contract claims.

I. **Forespar has expressly warranted the quality of the components and therefore it can be held liable for breach of express warranty.**

Massachusetts' implementation of the Uniform Commercial Code, M.G.L. c. 106, § 1-

101, et seq., governs contracts for the sale of goods and provides the rubric for analyzing breach

of such a contract. M.G.L. c. 106, § 2-102. Hylas has stated a valid claim for a breach of express

warranty, which is a contractual claim and therefore not barred by the economic loss doctrine.

Damage to the product itself is clearly recoverable when an express warranty has been

breached. See East River S.S. Corp. v. Transamerica, 476 U.S. 858, 873 (1986) (observing that a

warranty allows parties to apportion risk among themselves for damage to the product itself). An

express warranty is "Any affirmation of fact or promise made by the seller to the buyer which

relates to the goods and becomes part of the basis of the bargain creates an express warranty that

the goods shall conform to the affirmation or promise." M.G.L. c. 106, § 2-313(1)(a). ***Whether***

***there exists an express warranty is a question of fact***. See Glyptal Inc. v. Engelhard Corp., 801

F.Supp. 887, 895-96 (D.Mass. 1992); M.G.L. c. 106, § 2-313, comment 6. Creating an express

warranty does not require "formal words such as 'warrant' or 'guarantee'" or the specific intent

to make a warranty. M.G.L. c. 106, § 2-313(2). In fact, an express warranty can arise following

the formation of a contract without additional consideration. Glyptal, 801 F. Supp. at 896, n. 8;

M.G.L. c. 106, § 2-313, comment 7.

---

the warranties of merchantability in his demand letter and Complaint. SOF, ¶ 38. Nevertheless,
as the evidence has developed over the eighteen months of discovery, it is clear now that Sharp
did not, as he plead and demanded, suffer any damage to individuals or property other than the
Yacht. Sharp's losses are therefore entirely economic. In Massachusetts, a breach of the warranty
of merchantability arises in tort and therefore is barred by the economic loss doctrine. The
remaining claims, however, survive.

Forespar has fulfilled its warranty on numerous occasions in the past. In every instance, Forespar promptly and timely made necessary repairs and/or replacements of the defective components. SOF, ¶ 55. During these instances, Forespar again stated to Hylas in detail and with particularity that it would honor its warranty to Hylas, stand behind its products, and replace any defects. SOF, ¶ 56. Forespar has expressly stated that if Hylas has a problem with the manufacture or design of any of its components, Forespar will fix the problem or replace the component. SOF, ¶ 58.

Forespar acknowledges the existence of an express warranty. The designee most knowledgeable of Forespar, Scott Foreman, is the chief operating officer of Forespar. SOF, ¶ 40. He testified in his deposition to the terms of the warranty. SOF, ¶ 41. However, mindful that an express warranty can arise without the specific intent to create a warranty and following the formation of the contract, Foresman also testified that Forespar "stands behind its product." SOF, ¶ 42. He described the warranty as follows:

> Well, what ordinarily happens if there is an issue with one of our products, we hear from either the end user or, in this case, it could be a rigger or a dealer or boat manufacturer, an original equipment manufacturer, that they have some type of an issue with the Forespar product, and we gather information from them, we discuss how the product is being used, we discuss and gather information about what apparent problems there are, and then we work with that customer to either explain to them that they have not been using the product properly or we work with them to affect an approved repair.

SOF, ¶ 43. Foresman also testified that this warranty extends to defects in the manufacture, design, or installation of the products. SOF, ¶ 44. To the extent that Forespar fails to correctly follow the specifications that it was provided, it warrants that it will "correct that situation." SOF, ¶ 45. Foresman testified that there are no documents limiting Forespar's warranty to Hylas. SOF, ¶ 46. The evidence taken in the light most favorable to Hylas suggests the existence of a warranty and precludes summary judgment.

Furthermore, at this time, there is insufficient evidence available to conclude that Forespar breached its warranty by providing a non-conforming product. This requires the input of expert testimony, at the very least. It ideally requires the examination of the Forespar components while attached to the Yacht, but Sharp's spoliation of that evidence makes it impossible to know whether the components functioned properly under sailing conditions. To the extent that expert discovery may demonstrate that the components were defective, the Court should give Hylas an opportunity to support the fact with expert discovery. See Fed. R. Civ. P. 56(d) and (e). For the foregoing reasons, summary judgment on this issue is premature.

## II. Forespar can be held liable for breach of the implied warranty of fitness for a particular purpose, as that implied warranty does not arise in tort.

Under M.G.L. c. 106, § 2-315,

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Whether the warranty of fitness applies to a particular set of circumstances is a question of fact. Id. at comment 1. To prove a breach of the implied warranty of fitness, the claimant must prove: (1) the seller had reason to know of particular purpose for which the buyer required the goods, (2) the seller had reason to know of the buyer's reliance on seller's skill or judgment in selecting or furnishing suitable goods, and (3) the buyer in fact relied on the seller's skill or judgment. Glyptal, 801 F. Supp. at 895. A buyer does not need to rely solely on the expertise of the seller, but may rely both on his own judgment and the judgment of the seller. Kurriss v. Conrad & Co., 312 Mass. 670 (1942).

Unlike the warranty of merchantability, the implied warranty of fitness does not arise in tort and is not subject to the economic loss doctrine. In Regina Grape Products Co. v. Supreme

Wine Co., 357 Mass. 631, 634 (1970), the court found a breach of the implied warranty of fitness for a particular purpose when the plaintiff relied upon the defendant to ship to it a dry red wine that, based on the defendant's expertise, was capable of being mixed with sweet wine. Id. "[T]he wine shipped was watery, light in body and in color and not uniform in color or quality and would find no buyer." Id. at 635. Despite the fact that the wine at issue caused no harm other than loss of profits, the court permitted recovery for the breach of the implied warranty of fitness. Id. at 634. If the warranty of fitness for a particular purpose arose in tort, the court would necessarily have barred the claim under the economic loss doctrine. A suit on that warranty therefore arises in contract.

Hylas has plead—and the evidence supports—a breach of the implied warranty of fitness for a particular purpose. Each of the components that Hylas purchased from Forespar—the vang bracket, gooseneck bracket, and mast—were custom-made for the Yacht. SOF, ¶ 61. Forespar knew that the components were being custom-made for the Yacht and that Hylas would be relying on its expertise to build working components. SOF, ¶ 63. Hylas relied on Forespar's expertise in manufacturing those components. SOF, ¶ 62. Even though Hylas may have accepted the specifications, it lacked the technical knowledge to fully understand the specifications and did not provide the specifications to Forespar. The designs were created by Forespar and GMT. SOF, ¶¶ 64 and 65. Forespar also assembled the components before delivering them to Brad Storm, Hylas's Rigger. SOF, ¶¶ 66 and 70. Hylas may have relied on its own judgment in part, but the expertise to manufacture the components was ultimately Forespar's. See Kurriss, 312 Mass. at 670.

8

Hylas is again impeded by the lack of expert discovery and Sharp's spoliation of the components which has prevented any inspection or analysis of those components. Nevertheless, summary judgment at this stage is precluded.

### III. Hylas has a valid claim for breach of contract against Forespar.

#### A. Hylas has a claim for breach of contract under the Massachusetts Uniform Commercial Code.

Hylas has stated a claim for breach of contract, and the evidence as adduced thus far precludes summary judgment. When a buyer receives goods purchased from a seller, the buyer has the option to accept or reject the goods. M.G.L. c. 106, § 2-601. Under the perfect tender rule, the buyer has the right to reject any goods that "fail in any respect to conform to the contract." Id. Failure to reject after the opportunity to inspect the goods constitutes an acceptance. M.G.L. c. 106, § 2-606(1)(b). Following acceptance of goods, if the goods are later found to have a defect that was not apparent on inspection, the buyer may revoke his acceptance. M.G.L. c. 106, § 2-608(1)(b). If the buyer revokes his acceptance, he must notify the seller as soon as the defect is found. M.G.L. c. 106, § 2-608(2).

A buyer who revokes his acceptance has the "same rights and duties with regard to the goods involved as if he had rejected them." M.G.L. c. 106, § 2-608(3). Among those rights is the right to sue for damages, including for damages as if the goods had not been delivered. M.G.L. c. 106, § 2-711(1)(b). When a seller fails to deliver goods, the buyer may recover, *inter alia*, incidental and consequential damages. M.G.L. c. 106, § 2-713(1). Incidental damages include "reasonable expense incident to the delay or other breach" and consequential damages include "injury to person or property proximately resulting from any breach of warranty." M.G.L. c. 106, § 715.

Hylas has pleaded a viable breach of contract claim based on the evidence available to it. It is undisputed that Hylas purchased the gooseneck, vang plate, and similar components from Forespar. SOF, ¶ 11. All parties knew and agreed that the components would be installed on the Yacht. SOF, ¶¶ 3-6. It is similarly undisputed that Hylas accepted the components by installing them onto the Yacht. SOF, ¶ 14. However, as soon as Sharp told Hylas that the components were allegedly malfunctioning on June 21, 2011, Hylas immediately informed Forespar. SOF, ¶ 67. Forespar was kept informed about the repairs made to the gooseneck bracket component. SOF, ¶ 69.

It is a question of fact whether the components were, in fact, non-conforming. Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 197-98 (1st. Cir. 1995). Because the parties have not yet completed their expert discovery and Sharp spoliated the components at issue, it is premature (if not impossible) to conclude whether or not the components provided by Forespar contributed to the Yacht's mechanical failures. To the extent that expert discovery may demonstrate that the components were defective, the Court should give Hylas an opportunity to support the fact with expert discovery. See Fed. R. Civ. P. 56(d) and (e).

Nevertheless, to the extent that the goods were non-conforming, Hylas therefore revoked its acceptance. See M.G.L. c. 106, § 2-608(1)(b). Hylas is therefore entitled to damages for the breach of contract. It is also entitled to incidental and consequential damages, including any fees that Hylas owes to Sharp as a proximate result of the non-conformity. See M.G.L. c. 106, § 2-715.

**B. Hylas has a claim for breach of the covenant of good faith and fair dealing against Forespar.**

Additionally, the covenant of good faith and fair dealing was "in every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying

or injuring the right of the other party to receive the fruits of the contract." Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977). The bargain was that Forespar would design the products based on the specifications provided by GMT and that the products would work. Forespar was and is aware of the enormous loads on the products that it manufacture, making it essential to the bargain that the components would operate under such stresses. The evidence produced in discovery demonstrates that the components have not performed as intended. For the foregoing reasons, summary judgment on this count should not be granted.

## IV. Forespar can be compelled to indemnify Hylas for damages arising out of any fault by Forespar.

One can be required to indemnify another "only when one does not join in the negligent act, but is exposed to derivative or vicarious liability for the wrongful act of another." Stone & Webster Eng'g Corp. v. United Indus. Syndicated, Inc., 16 Mass. App. Ct. 948, 949 (1983); see Rathburn v. W. Mass. Elec. Co., 395 Mass. 361 (1985). "The retailer or distributor who has acted merely as a conduit for the product and has not altered it or otherwise acted in a manner that contributed to the injuries may then normally sue the manufacturer of the defective product for indemnification." Mitchell v. Stop & Shop Cos., 41 Mass. App. Ct. 521, 523 (1996); see Santos v. Chrysler Corp., 430 Mass. 198, 217–18 (1999); Fireside Motors v. Nissan Motor Corp., 395 Mass. 366, 370 (1985). Indemnification is a claim independent of tort, contract, or other claims: "there is nothing preventing the plaintiffs from pursuing [the indemnification claims] and from seeking to establish fault … in support of those particular claims." Cruickshank v. Clean Seas Co., 346 B.R. 571, 584 (Bankr. Mass. 2006).

Indemnification is appropriate in this case if Forespar defectively manufactured the components at issue. It is undisputed that Hylas purchased the components from Forespar and that Forespar installed the components into a unit for shipping. SOF, ¶ 66. Hylas hired Storm

Rigging—a separate entity—to install the mast onto the Yacht. SOF, ¶ 70. Hylas has therefore merely acted as a conduit for the components. Further, it is undisputed that at no time did Hylas make any modifications to the components of the Yacht; they were made by Sharp and others. SOF, ¶¶ 27, 28, 29, 31, 32. Therefore, to the extent that the product is defective (which cannot be determined at this time because expert discovery is incomplete and Sharp spoliated the components), Forespar is liable to indemnify Hylas for Sharp's damages. This claim therefore survives.

## **Conclusion**

Hylas concedes that the claim for breach of the implied warranty of merchantability is barred by the economic loss doctrine and properly disposed of at this juncture. Sharp has failed to demonstrate any non-economic damages. Nevertheless, Hylas's remaining claims against Forespar are viable and therefore summary judgment on those claims should be denied.


Respectfully submitted,

HYLAS YACHTS, INC.,

By its counsel,

/s/ Jeffrey S. Baker
Jeffrey S. Baker
Baker & Assoc., P.C.
Two West Hill Place
Suite 100
Boston, MA 02114
Phone: 617-573-9505
Fax: 617-573-9503
E-mail: bakerlaw@aol.com

Date: June 7, 2013

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this day, I served or caused to be served by first class mail or E-mail a

true and accurate copy of this document on the following persons:

David Farrell, Esq.
Law Office of David J. Farrell, Jr.
2355 Main Street
S. Chatham, MA 02659

Thomas J Muzyka, Esq.
Clinton & Muzyka
88 Black Falcon Avenue
Suite 200
Boston, MA 02210

Terence S. Cox, Esq.
Cox Wootton Griffin Hansen & Poulos, LLP
190 The Embarcadero
San Francisco, CA 94105

Christian G. Samito, Esq.
Jouret & Samito LLP
1 Center Plaza
Suite 220
Boston, MA 02108

Alexandra B. Harvey, Esq.
Adler, Cohen, Harvey, Wakeman & Guekguezian LLP
75 Federal Street
10th Floor
Boston, MA 02110

/s/ Jeffrey S. Baker
Jeffrey S. Baker

Date: June 7, 2013

13